Brian S. Kabateck, SBN 152054
bsk@kbklawyers.com
Anastasia K. Mazzella, SBN 245201
am@kbklawyers.com
Shant A. Karnikian, SBN 285048
sk@kbklawyers.com
**KABATECK BROWN KELLNER LLP**
644 S. Figueroa Street
Los Angeles, CA 90017
Tel.: (213) 217-5000
Fax: (213) 217-5010

Attorneys for Plaintiff, LARRY CRAFT,
individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY CRAFT, an individual; on behalf of himself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>RWI TRANSPORTATION, LLC,<br><br>                    Defendants. | Case No.: 2:17-cv-05289-SVW<br><br>Assigned for all purposes to Hon. Stephen V. Wilson<br><br>**NOTICE OF SECOND RENEWED MOTION AND SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:         August 6, 2018<br>Time:         1:30 p.m.<br>Judge:        Hon. Stephen V. Wilson<br>Courtroom:  10A<br><br>Complaint Filed:  June 19, 2017 |

- 1 -

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 6, 2018 at 1:30 p.m. or as soon
thereafter as the matter may be heard in Courtroom 10A of the above-entitled court
located at 350 W. First Street, 10th Floor, Los Angeles, California 90012, Plaintiff
LARRY CRAFT ("Plaintiff") will, and hereby does, move for an order: (1)
preliminarily approving the proposed Class Action Settlement ("Settlement
Agreement" or "Settlement") in this matter, (2) approving appointment of CPT
Group, Inc. ("CPT Group") as the settlement administrator, (3) approving and
directing distribution of the class notice to the Settlement Class, (4) approving the
proposed Class Representatives and Class Counsel, and (5) setting a final fairness and
approval hearing.

This Second Renewed Motion is submitted pursuant to the Court's March
26, 2018 Minute Order denying Plaintiffs' initial Motion for Preliminary Approval
without prejudice and "with leave to a file a new motion" (Dkt. No. 40) and the
Court's June 14, 2018 Minute Order denying Plaintiffs' Renewed Motion for
Preliminary Approval "for the same reasons set forth in the previous order." (Dkt.
No. 45.)  Given the Court's finding that this case does not "merit[…] an attorneys'
fee award above the 25% benchmark" (Dkt. No. 40), Plaintiff hereby submits this
Second Renewed Motion wherein **(1) Plaintiff agrees not to seek attorneys fees
above the 25% benchmark at the time of Final Approval,** and **(2) provides
substantiation of incurred and anticipated costs.**

Pursuant to Federal Rules of Civil Procedure, Rule 23, which provides for
court approval of the settlement of a class action, Plaintiff and Defendant RWI
TRANSPORTATION, LLC ("Defendant") (collectively, the "Parties") respectfully
request that this Court grant preliminary approval of the proposed Class Action
Settlement Agreement.

The basis for this Second Renewed Motion is that the proposed Settlement

2

is fair, adequate, and reasonable and in the best interests of the Settlement Class as a whole, and that the procedures proposed are adequate to ensure the opportunity of the proposed Settlement Class Members to participate in, opt out of, or object to the Settlement.

This Motion will be based on the Memorandum of Points and Authorities set forth herein; the concurrently filed Declarations of Shant A. Karnikian and Brian S. Kabateck; the proposed fully executed Class Action Settlement Agreement, attached to the Declaration of Brian S. Kabateck as **Exhibit 1**, including the Notice of Proposed Class Action Settlement (attached thereto as **Exhibit A**), the proposed Notice of Estimated Individual Settlement Payment (attached thereto as **Exhibit B**); and such evidence or oral argument as may be presented at the Preliminary Approval hearing; and on the complete records and file herein.

Dated: July 5, 2018                         **KABATECK BROWN KELLNER LLP**

                        By:    /s/ Shant A. Karnikian
                               Brian S. Kabateck
                               Anastasia K. Mazzella
                               Shant A. Karnikian
                               Attorneys for Plaintiff LARRY CRAFT
                               and all others similarly situated

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 2

       A.    Factual Background and Relevant Legal Issues .................................... 2

       B.    Procedural and Litigation History................................................ 4

       C.    The Settlement ............................................................... 6

III.   SUMMARY OF THE PROPOSED SETTLEMENT................................................ 7

       A.    The Settlement Class Definitions................................................ 7

       B.    Stipulation of Settlement....................................................... 7

       C.    Value of the Settlement to the Class ............................................ 10

       D.    Class Notice ................................................................. 11

       E.    Procedure for Uncashed Checks .................................................. 13

IV.    PLAINTIFFS AND CLASS COUNSEL WILL LIMIT THEIR REQUEST FOR

       ATTORNEYS FEES TO 25%...................................................... 13

       A.    Standard For Calculation of Fee Awards .......................................... 14

       B.    The Efforts Expended By Counsel ............................................... 14

       C.    The Complexity of the Case ................................................... 18

       D.    Substantiation of Costs ....................................................... 19

       E.    Costs and Fees Not Awarded at Final Approval Will Be Disbursed to Class

             Members. .................................................................. 20

V.     STANDARDS FOR APPROVAL OF SETTLEMENT............................................. 20

       A.    The Two-Step Approval Process ................................................ 20

       B.    Class Counsel's Thorough Investigation and Litigation Efforts........................ 21

       C.    Procedures for Settlement Before Class Certification ................................ 23

             1.    Ascertainability and Numerosity ......................................... 24

             2.    Predominance of Common Questions of Law and Fact ......................... 24

             3.    Typicality ............................................................. 27

             4.    Adequacy ............................................................. 27

RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

VI.  THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON OBJECTIVE EVIDENCE.................................................................................................. 28

  A.    The Strength of Plaintiff's Case and Complexities of Further Litigation............ 28

  B.    The Benefits Conferred by the Settlement.......................................... 30

  C.    The Experience and Views of Counsel .............................................. 31

  D.    The Absence of "Obvious Defects" or Any Indicia of Unfairness..................... 32

  E.    The Settlement Falls Within the Range of Possible Approval. .......................... 33

VII.  CONCLUSION.................................................................................. 34

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

# **TABLE OF AUTHORITIES**

## **Cases**

*Amchem Prods. v Windsor*
  (1987) 521 U.S. 591....................................................................................... 26

*Bartold v. Glendale Fed. Bank*
  (2000) 81 Cal.App.4th 816 ............................................................................ 26

*Bernstein v. Virgin Am., Inc.*,
  227 F.Supp.3d 1049, 1062-63 (N.D. Cal. Jan. 5, 2017)................................... 13

*Classen v. Weller*
  (1983) 145 Cal.App.3d 27 .............................................................................. 29

*Collins v. Rocha*
  (1972) 7 Cal.3d 232 ....................................................................................... 26

*Craft v. Cty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...................................................... 8, 12

*Dunk v. Ford Motor Co.*
  (1996) 48 Cal.App.4th 1794 ......................................................... 25, 26, 27, 28

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
  307 F.3d 997 (9th Cir.2002) ............................................................................. 8

*Hammon v. Barry*
  (D.D.C. 1990) 752 F.Supp. 1087................................................................ 31, 33

*Heritage Bond Litigation*,
  2005 WL 1594403, *18 (C.D.Cal.2005) ........................................................... 8

*In re Armored Car Antitrust Litigation*
  (N.D. Ga. 1979) 472 F.Supp. 1357.................................................................. 31

*In re Baldwin-United Corp.*
  (S.D.N.Y. 1984) 105 F.R.D. 475...................................................................... 25

*In re Chicken Antitrust Litigation*
  (N.D. Ga. 1980) 560 F.Supp. 957.................................................................... 31

*In re School Asbestos Litigation*
  (3d Cir. 1990) 921 F.2d 1330 ......................................................................... 29

*In re Tableware Antitrust Litig.*
  (N.D. Cal. 2007) 484 F.Supp.2d 1078............................................................. 35

*In re Vitamin Cases*
  (2003) 110 Cal.App.4th 1041 ......................................................................... 22

*Lafitte v. Robert Half Int'l, Inc.*
  (2016) 205 Cal.Rptr.3d 555 ............................................................................ 21

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

*Lealao v. Beneficial California, Inc.*
   (2000) 82 Cal.App.4th 19 ............................................................................. 22

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
   (7th Cir. 1987) 834 F.2d 677 ...................................................................... 31

*McGee v. Bank of America*
   (1976) 60 Cal.App.3d 442 .......................................................................... 29

*Nat'l Football League Players Concussion Injury Litig.,*
   821 F.3d 410 (3d Cir. 2016) ........................................................................ 8

*Oman v. Delta Air Lines, Inc.,*
   230 F.Supp.3d 986 (N.D. Cal. Jan. 6, 2017) ............................................. 13

*Priddy v. Edelman*
   (6th Cir. 1989) 883 F.2d 438 ...................................................................... 31

*Reyes v. Bd. of Supervisors*
   (1987) 196 Cal.App.3d 1263 ...................................................................... 26

*Rodriguez v. West Publ'g Corp.*
   (9th Cir. 2009) 563 F.3d 948 ...................................................................... 35

*Sarviss v. Gen. Dynamics Info. Tech., Inc.,*
   663 F.Supp.2d 883 (C.D. Cal. 2009) .......................................................... 12

*Sav-On Drug Stores, Inc. v. Superior Court*
   (2004) 34 Cal.4th 319 ................................................................................. 26

*Six Mexican Workers v. Arizona Citrus Growers,*
   904 F.2d 1301 (9th Cir.1990) ...................................................................... 8

*Steinberg v. Carey*
   (S.D.N.Y. 1979) 470 F. Supp. 471 ............................................................. 31

*Vasquez v. Coast Valley Roofing, Inc.*
   (E.D. Cal. 2009) 670 F.Supp.2d 1114 ........................................................ 35

*Wal-Mart Stores, Inc. v. Dukes*
   (2011) 131 S.Ct. 2541 ................................................................................. 35

*Ward v. United Airlines,*
   No. C 15-02309, 2016 WL 3906077, *3–5 (N.D. Cal. July 19, 2016) .......... 13

*Wershba v. Apple Computer, Inc.*
   (2001) 91 Cal.App.4th 224 ......................................................................... 25

## **Statutes**

Cal. Bus. & Prof. Code § 17200 .......................................................... 1, 3, 28

Cal. Lab. Code § 226.7 ............................................................................. 27

Cal. Lab. Code § 226.8(a)(1) ..................................................................... 27

Cal. Lab. Code § 2802 ............................................................................... 28

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

Cal. Lab. Code 226(a) ................................................................ 3, 28

Fed. R. Civ. P. 23(h) ...................................................................... 8

Fed. R. Civ. Proc. 23 ................................................ 2, 22, 25, 35

Fed. R. Civ. Proc. 30(b)(6) ......................................................... 23

Federal Rules of Civil Procedure, Rule 23(h) ............................... 7

Labor Code Section 226(a)(1) ....................................................... 3

**<u>Other Authorities</u>**

4 Alba Conte & Herbert B. Newberg
   (4th ed. 2002) Newberg on Class Actions ............................. 23, 31, 33

*Manual for Complex Litigation*
   (3d ed. 1995) ........................................................................ 22

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff LARRY CRAFT ("Plaintiff") respectfully submits this Second Renewed Motion seeking preliminary approval of a proposed settlement ("Settlement") of a class action filed on behalf of approximately 584 current and former truck drivers of Defendant RWI TRANSPORTATION, LLC ("Defendant") (collectively with Plaintiff, the "Parties,") relating to the alleged misclassification of drivers as "independent contractors" by Defendant; failure to provide meal and rest breaks; failure to pay overtime and minimum wages; failure to pay all wages upon separation; failure to furnish timely and accurate wage statements; failure to pay all wages owed every pay period; failure to reimburse business expenses, and for violation of Business and Professions Code section 17200 *et seq.* under California's Unfair Competition Act.

Plaintiff previously filed his Unopposed Motion for Preliminary Approval on March 22, 2018. (Dkt. No. 38, "initial motion".)  The Court issued an Order on March 26, 2018 denying Plaintiff's initial motion, without prejudice and with leave to file a new motion, on the grounds that "the Court sees no reason why this case merits an attorneys' fee award above the 25% benchmark" and because the moving papers did not substantiate the figure provided for costs. (Dkt. No. 40.) The Court also ordered the parties to have the settlement agreement reflect that any amount the Clerk does not grant from the $35,000 sought in costs at Final Approval "shall be dispersed among the class members."

Pursuant to the Court's March 26, 2018 minute order (Dkt. No. 40.), Plaintiff submitted a Renewed Motion for Preliminary Approval ("Renewed Motion") (Dkt. No. 43) presenting evidence regarding (1) the substantial efforts expended by counsel to prosecute this case—including opposing Defendant's Motion to Transfer Venue, conducting written discovery, taking multiple out-of-state depositions, filing a substantial motion for class certification, and engaging in extensive settlement

negotiations–while successfully adhering to the Court's expedited class certification deadline; (2) the novel legal issues in the case which rendered it significantly more complex than a typical misclassification case; (3) substantiation of incurred and anticipated costs; and (4) language in the Settlement Agreement reflecting that any amount not granted from the $35,000 sought in costs at Final Approval will be distributed among the class members.

On June 14, 2018, the Court issued a Minute Order denying Plaintiff's Renewed Motion "for the same reasons set forth in the previous order, specifically the rationales related to attorneys' fees." (Dkt. No. 45.) Plaintiff hereby submits this Second Renewed Motion wherein Plaintiff and his counsel **(1) agree not to seek attorneys fees above the 25% benchmark at the time of Final Approval, (2) provide substantiation of incurred and anticipated costs,** and **(3) highlight language in the Settlement Agreement requiring that any amount not granted from the $35,000 sought in costs be distributed to the Class.**

In addition to addressing the Court's concerns regarding costs and fees, this Second Renewed Motion also seeks to establish that the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Settlement Class as a whole, and that the procedures proposed are adequate to ensure the opportunity of the proposed Settlement Class Members to participate in, opt out of, or object to the Settlement.

For the reasons more fully discussed below, Plaintiff requests that the Court grant this Second Renewed Motion for Preliminary Approval of Class Action Settlement in all respects and enter the submitted preliminary approval order filed concurrently herewith.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background and Relevant Legal Issues

On June 19, 2017, Plaintiff LARRY CRAFT, individually, and on behalf of all other similarly situated current and former drivers engaged by Defendant, filed a class

2

action complaint against Defendant RWI TRANSPORTATION, LLC in Los Angeles County Superior Court, Case No. BC665578 (the "*Craft* Action").  (Declaration of Brian S. Kabateck ("Kabateck Decl."), ¶ 3.)

Plaintiff (on behalf of himself and all others similarly situated and similarly aggrieved) sought damages, restitution, penalties, pre- and post-judgment interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court based on claims for:  (1) misclassification of employees; violation of Labor Code Section 226(a)(1); (2) failure to provide meal periods; (3) failure to provide rest breaks; (4) failure to pay overtime wages; (5) failure to pay minimum wages; (6) failure to pay all wages upon separation; (7) failure to furnish timely and accurate wage statements; (8) failure to pay all wages owed every pay period; (9) failure to reimburse business expenses; (10) unlawful deductions from wages; (11) penalties under the Private Attorneys General Act ("PAGA"); and (12) violation of California's Unfair Competition Law under California Business & Professions Code section 17200, premised on the preceding wage-and-hour claims.  (Kabateck Decl., ¶ 3.)

Plaintiff's counsel is Kabateck Brown Kellner LLP and Defendant's counsel is Littler Mendelson, P.C. and Dinsmore & Shohl LLP, all of whom have extensive experience litigating wage and hour class actions.  Plaintiff's counsel and Defendant's counsel have litigated the *Craft* Action since its inception on June 19, 2017. (Kabateck Decl., ¶ 4.)

Plaintiff alleges that actionable violations of the California Labor Code, the California Business and Professions Code, and the California Industrial Welfare Commission ("IWC") Wage Orders occurred here based on evidence showing that the work performed and the conditions of employment were that of an "employee." Plaintiff's allegations include that Defendant provided drivers with trucks through a lease arrangement with preferred third-party leasing companies; Defendant directed and controlled the way drivers performed their work; Plaintiff and other drivers reported to Defendant's offices; Defendant was able to discipline and terminate

SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

Plaintiff; the services Plaintiff and other drivers performed were a regular part of Defendant's business; Plaintiff and other drivers did not incur a profit or loss *per se* on the deliveries; Defendant provided any other equipment needed to perform their work; Defendant deducted from Plaintiff and other drivers' paychecks amounts for fuel, truck lease payments, insurance on the trucks, tolls, etc. and did not reimburse Plaintiff and other drivers for expenses including fees charged at the fuel, other insurance, heavy vehicle use taxes, and fees.

Defendant denies each of the claims asserted against it in this Action and denies all liability in this Action.  Defendant has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in this Action. Defendant contends that it complied in good faith with California wage and hour laws, including but not limited to, the California Labor Code, the California Business and Professions Code, and the California IWC Wage Orders.  Additionally, Defendant contends that the Class Members retained significant discretion in performing driving services under RWI's DOT authority, including the time, place, and manner in which they performed those services, that several Class Members did business with RWI as limited liability companies and not individuals, that some Class Members owned multiple tractors and in fact hired other drivers to drive those tractors, and that Class Members spent significant time performing driving services outside California and that California wage and hour laws therefore either do not apply or significantly limits the damages recoverable by Class Members in this action.  These legal obstacles were considered within the rubric of analyzing the reasonableness of this Settlement. (Kabateck Decl., ¶ 5.)

### B.    Procedural and Litigation History

On July 18, 2017, Defendant removed the Action to the United States District Court, Central District of California, and the case was assigned to Hon. Stephen V. Wilson.  (Dkt. Nos. 1, 6; Kabateck Decl., ¶ 3.)  Plaintiff's counsel researched the issue

of whether removal was proper, and ultimately decided not to oppose this removal or to seek to remand the case.  (Kabateck Decl., ¶ 3.)

On September 13, 2017, Defendant moved to transfer venue of the *Craft* Action to the Eastern District of Pennsylvania.  (Dkt. No. 22.)  Plaintiff successfully opposed this transfer per the Court's October 18, 2017 Order.  (Dkt. No. 28.)

The Parties then engaged in extensive formal discovery and the exchange of information and documentation, which allowed the parties to seriously evaluate the claims alleged in the *Craft* Action.  (Kabateck Decl., ¶¶ 4, 5.) Discovery efforts entailed: propounding requests for documents, which resulted in the production of well over 20,000 pages of documents including personnel records, training manuals, policy manuals, trip logs, payroll statements, internal memos, etc., all of which were reviewed by counsel for Plaintiff; preparing for, traveling to/from, and taking five depositions of key witnesses in Ohio; taking two depositions of witnesses in Los Angeles; preparing for and defending the deposition of Plaintiff; and reviewing documents and responding to discovery requests from Defendant.

On December 14, 2017, a mediation took place between the Parties before mediator Joel Grossman of JAMS.  (Kabateck Decl., ¶ 5.)  Counsel were aware of (1) the potential cost of future litigation, (2) the risk of moving forward with the class certification motion filed and pending, (3) the risk of decertification if certified, and (4) the risks and expenses of continued litigation through trial and appeal.  (*Id.*)

After the lengthy December 14, 2017 mediation, the parties continued to discuss settlement possibilities. Throughout the course of the remainder of the month, and during the busy holiday schedule, counsel continued to engage in negotiations. In the meantime, given the impending class certification deadline, the litigation efforts discussed above—including the grueling out-of-state depositions— simultaneously proceeded in full force.

While settlement negotiations and discovery were ongoing, on January 26, 2018, counsel for Plaintiff drafted and filed a 21-page Motion for Class Certification

along with three declarations and 20 exhibits in support thereof. (Dkt. No. 31). In other words, counsel diligently and simultaneously toiled away on three fronts: (1) discovery, (2) negotiations, (3) class certification.

On February 2, 2018, Defendant filed their Opposition to Plaintiff's Motion for Class Certification. (Dkt. No. 33.) In response, Plaintiff's counsel immediately prepared to draft their Reply, which was due on February 9, 2018.

## C.    The Settlement

After Plaintiff filed their Motion for Class Certification and Defendant filed their Opposition—and just hours before Plaintiff's Reply was due—the parties finally reached a settlement in principal on the morning of February 9, 2018. Specifically, Defendant agreed to pay Nine Hundred and Fifteen Thousand Dollars ($915,000) to settle this action, which includes (i) the total value of all Individual Settlement Payments; (ii) the attorneys' fees and costs awarded by the Court to Class Counsel; (iii) the settlement administration costs; (iv) the Enhancement Payment awarded by the Court to Named Plaintiff; and (v) civil penalties recoverable under the Private Attorneys General Act ("PAGA") to the Labor Workforce and Development Agency ("LWDA"). The complete terms of the proposed Settlement are set forth in the fully executed proposed Class Action Settlement Agreement ("Settlement Agreement" or "Agreement"), which is attached to the Declaration of Brian S. Kabateck as **Exhibit 1**. (Kabateck Decl., ¶ 2.) This is a non-reversionary class settlement, with no claims-made process. (Kabateck Decl., ¶ 9.)

Given the very real litigation risks and the uncertainty created by the existence of novel issues, Class Counsel believe that the Settlement of $915,000 is a fair and reasonable one. Defendant has concluded that further conduct of the *Craft* Action would be protracted and expensive and that it is desirable to settle to limit further expense, inconvenience, distraction, and to permit the operation of Defendant's business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in this Action. Both parties have

considered the uncertainty and risks inherent in any litigation, especially in complex cases such as this action. Both parties, therefore, determined that it is desirable and beneficial to it that it be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

The parties finalized a formal Stipulation and Agreement for Class Action Settlement ("Settlement Agreement") (**Exhibit 1** to the Kabateck Decl.). Likewise, the parties have prepared, and request that this Court approve, the Notice of Proposed Class Action Settlement (**Exhibit A** to Exhibit 1 of the Kabateck Decl.) and the Notice of Estimated Individual Settlement Payment (**Exhibit B** to Exhibit 1 of the Kabateck Decl.).

### III.    SUMMARY OF THE PROPOSED SETTLEMENT

#### A.    The Settlement Class Definitions

The Parties agree that the Settlement Class should be defined as follows:

> *All individuals who Defendant classified as independent contractors who drove under load for RWI and/or whose tractor was driven under load for RWI to or from California under RWI's DOT authority at any time from June 19, 2013 through March 31, 2018, or the date preliminary approval is granted, whichever is sooner.*

Based on Defendant's records as of February 2018, there are 584 Class Members (90 current drivers and 494 former drivers) who worked as independent contractor drivers for Defendant during the Class Period.

#### B.    Stipulation of Settlement

The Settlement describes in detail the terms of the proposed settlement reached by the Parties and the details of the recovery for the Class. (Kabateck Decl., **Exhibit 1**.) The Settlement Agreement is made in compromise of all disputed claims included in the *Craft* Action's operative Complaint. All Settlement Class Members seek the same legal remedies under the same state laws. The payments to be made by

Defendant under this Settlement will include all amounts sought by Plaintiff and the Class in the Class Action, including but not limited to alleged unpaid compensation, including deductions for business expenses, overtime and minimum wage compensation, compensation for missed, late, on-duty, and/or short meal periods and rest breaks, failure to timely pay wages at termination, and failure to provide timely and accurate wage statements; interest; penalties, attorneys' fees; litigation costs and expenses; Class Representative's Enhancement Payment; settlement administration costs; and any court-mandated employee and/or employer tax withholdings thereupon, including, without limitation, the employees' and employers' shares of payroll taxes. (*Id.* at § I.J.)  The material terms of the Settlement are as follows:

1. Defendant shall pay $915,000 to settle the Action to the Settlement Administrator, which includes amounts to be paid to Class Members, the awards for Attorneys' fees and costs and Named Plaintiff's Enhancement Payment, and the settlement administration expenses, no portion of which will revert back to Defendant.  (*Id.*, at §§ I.N., II.A.)  This $915,000 is based on the assumption that the Class comprises 584 drivers with 22,037 Qualifying Work Weeks ("QWW").  (*Id.*, at § II.A.)

2. The Settlement Administrator will be responsible for calculating Individual Settlement Payments to be paid to each Participating Class Member, which is based on the number of QWW that each Participating Class Member was in the Class Position during the Class Period.  (*Id.*, at §§ I.EE., I.Q.)

3. The Gross Settlement Amount is non-reversionary—none of it will revert to Defendant.  In addition, it is not a claims-made settlement.  To participate in the Settlement, Class Members need only not opt out.  (*Id.*, at ¶ I.J, II.A.)

4. A judgment will be entered on the Settlement releasing Defendant from any claims by the Class Members.  (*Id.*, at § III.C.)

5. The Settlement Administrator shall be CPT Group, Inc.  Defendant will pay the Settlement Administrator for reasonable settlement administration fees not

to exceed Ten Thousand Five Hundred Dollars ($10,500), which shall be deducted and paid solely from the Gross Settlement Amount.  Any fees incurred by CPT Group in excess of the foregoing amount shall also be paid solely from the Gross Settlement Amount.  (*Id.*, at §§ I.EE. I.FF., II.E.)

6. Class Counsel will file an application requesting that the Court award an Individual Enhancement to LARRY CRAFT in an amount not to exceed Fifteen Thousand Dollars ($15,000), payable within five (5) days after Final Approval of the Settlement, which Defendant will not oppose.  The Class Representative shall receive this Enhancement Payment and the compensation he stands to receive as a Participating Class Member.  (*Id.*, at § I.I., I.N., II.B.)

7. While the Settlement allows for Class Counsel to seek attorneys' fees in the total amount not to exceed one-third (1/3) of the ultimate Gross Settlement Amount (*Id.*, at § II.D.), pursuant to the Court's Orders, Plaintiffs and Class Counsel have agreed to seek **no more than twenty-five percent (25%)** of the Gross Settlement Amount in fees at the time of Final Approval.  Accordingly, assuming the Gross Settlement Amount remains at $915,000, then Class Counsel will seek a maximum total award of attorneys' fees in the amount of $228,750 (25% of the Gross Settlement Amount).  (*Ibid.*)  The precise percentage of attorneys' fees in the preceding sentence shall be preserved if the Gross Settlement Amount changes.  (*Ibid.*)  Defendant will not oppose this application.  (*Ibid.*)

8. A total of Twenty-Five Thousand Dollars ($25,000) will be allocated to the LWDA for civil penalties under PAGA, of which 75% (equal to $18,750) will be paid to the LWDA and 25% (equal to $6,250) will be paid to Class Members.  (*Id.*, at § II.C.)  The Settlement Administrator will deduct these amounts from the Gross Settlement Amount and direct them to the LWDA and Class Members in their Individual Settlement Payments.  (*Id.*, I.R.)

9. Class Counsel will file an application requesting that the Court award Class

SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

Counsel reasonable costs incurred, as proven, not to exceed a total of thirty-five thousand dollars ($35,000).  (*Id*., at § II.D.)  Lastly, "[a]ny amount for attorneys' fees and/or costs not approved by the Court will be included in the Net Settlement Amount and Distributed to Participating Class Members." (*Id.*)

10. The "Class Period" runs from June 19, 2013 through March 31, 2018, or the date preliminary approval is granted, whichever is sooner.  (*Id*., at § I.G.)

## C.    Value of the Settlement to the Class

The proposed Settlement provides for a relatively easy procedure to participate in or exclude oneself from the settlement, which imposes minimal burdens on the Class.  (Kabateck Decl., ¶ 9.)  Individual Settlement Payments will be paid from the Non-Reversionary Settlement Fund to Participating Class Members based on the number of Qualifying Weeks Worked ("QWW") in the Class Position during the Class Period credited to the Participating Class Member as a percentage of the total Qualifying Weeks Worked in the Class Position during the Class Period credited to all Participating Class Members.  (*Ibid.*)  The Gross Settlement Amount is $915,000. (Kabateck Decl., **Exhibit 1**, §§ I.J., II.A.)  The Net Settlement Amount means the portion remaining after attorneys' fees and costs, the Class Representative's Enhancement Payment, Settlement Administrator's costs, and PAGA penalties are deducted from the Gross Settlement Amount, which shall then be allocated to Individual Settlement Payments for Participating Class Members.  (*Id.* at § I.R.)

There will be at least Six Hundred Seven Thousand Dollars ($607,000) available for the Participating Class Members.  (Kabateck Decl., ¶ 10.)  Assuming none of the 584 Class Members opts out and all 22,307 weeks remain unchanged, the estimated Individual Settlement Payments per Qualifying Work Week is $27.21. (*Ibid.*)  This table summarizes the Settlement Agreement amounts:

| | | |
|---|---|---|
| Gross Settlement Amount | $ | 915,000.00 |
| Attorneys' Fees | $ | (228,750.00) |
| Attorneys' Costs Incurred | $ | (35,000.00) |

10

| | | |
|---|---|---|
| Class Representative Enhancement | $ | (15,000.00) |
| Settlement Administrator's Costs | $ | (10,500.00) |
| PAGA Penalties for the LWDA | $ | (18,750.00) |
| **Net Settlement Amount** | **$** | **607,000.00** |

Individual Settlement Payments to be paid to each Participating Class Member will be allocated as follows:

- One-third (1/3) to non-wage damages, which will not be subject to withholding (Form 1099 to be issued);

- One-third (1/3) to interest, which will not be subject to withholding (Form 1099 to be issued); and

- One-third (1/3) to penalties, which will not be subject to withholding (Form 1099 to be issued).

(Kabateck Decl., **Exhibit 1**, § I.Q., II.A.)  Each Participating Class Member, Class Counsel, and Class Representative payment recipient will be responsible for remitting to state and/or federal taxing authorities any applicable taxes which may be owed on the non-wage portion of any payment received pursuant to this Agreement, except as provided by this Settlement Agreement.  (*Ibid.*)  Class Members who may have questions about their tax liability should consult independent tax counsel.  (*Ibid.*)

The claims that Participating Class Members will release are set forth in the Settlement Agreement and discussed herein.  (*Id.* at §§ I.X., III.B.)  In exchange for Individual Settlement Payments, Participating Class Members will release Released Parties from all Released Claims specified in the Settlement Agreement.  (*Ibid.*)  Additionally, all Participating Class Members who negotiate their Individual Settlement Payment checks will also release all losses, damages, liquidated damages, demands, penalties, interest, liabilities, causes of action, complaints or suits, at law or in equity against the Released Parties under Fair Labor Standards Act and its associated regulations. (*Ibid.*)

### D.    Class Notice

The notice to the Class will be disseminated by the best means possible—direct

mail notice.  In Plaintiff's Counsel's experience in comparable cases, notice has been successfully mailed to approximately 90% of the class; a similar result is anticipated here.  (Kabateck Decl., ¶ 12.)

Each individual will be given notice by first-class mail of the pendency of this Action, the terms of the proposed Settlement (including the Settlement benefits, the scope of claims released, and attorneys' fees and costs), and their right to opt out to the Settlement, object to the Settlement, and dispute the number of Qualifying Work Weeks.  (Kabateck Decl., ¶ 12; Kabateck Decl., **Exhibits 1** and **2 to Exhibit A**.) Upon the Court's approval of the proposed Notice Packet, Class Counsel will have CPT Group translate the English version into Spanish, both versions of which will be disseminated to each Class Member.  (Kabateck Decl., ¶ 7.)  Class Counsel will provide to the Court the final English and Spanish versions of the Notice Packet with the Settlement Administrator's Declaration of Compliance when Class Counsel file their Motion for Final Approval.  (*Id.*)

To assist the Participating Class Members in understanding the lawsuit and Settlement, and to facilitate informed decisions about the exercise of their rights, the Settlement Administrator will maintain web, electronic mail, and toll-free telephone support services.  (Karnikian Decl., ¶ 4.)  Telephone support will include an available live operator, able to speak English and Spanish, during regular business hours to guide callers through the notices to find any information they seek, and if necessary, to answer anticipated questions based on information jointly provided by the Parties. (*Id.*)  The Settlement Administrator will maintain a website that allows users to download settlement documents and other key documents from the Court's file in this Action.  (*Id.*)  The Settlement Administrator will redirect Class Members' questions it cannot answer to Class Counsel.  (*Id.*)

Notice will be mailed to Class Members by first-class mail, at their last-known addresses provided in Defendant's records provided to the Settlement Administrator, updated through U.S. Postal Service's National Change of Address ("NCOA")

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

database. (Kabateck Decl., ¶ 12.) Notices returned as undeliverable shall be re-mailed to the best available address after performing skip-tracing services offered by publicly available databases. (Kabateck Decl., **Exhibit 1**, § IV.D., Kabateck Decl., ¶ 12.) The Settlement Administrator will employ similar updating procedures at the time of mailing settlement payments to Participating Class Members. (*Ibid.*)

In this manner, the Settlement provides for the highest possible likelihood of providing *actual* notice to the Settlement Class Members of this Settlement, a real opportunity to exercise their rights, and, if they remain Class Members and the Settlement is approved, *actual* receipt of settlement payments. This is an ideal notice program, reasonably calculated to *actually* reach approximately 90% of the Class, without (further) compromising Class Members' privacy. (Kabateck Decl., ¶ 12.)

### E. Procedure for Uncashed Checks

This matter was settled with no claim form requirement and with no residual to revert to Defendant. (Kabateck Decl., **Exhibit 1**, § II.A.) Any portion of a Class Member's settlement not paid as a result of an invalid address or any checks issued by the Settlement Administrator to Participating Class Members not cashed within one hundred and eighty (180) days will be void. (*Ibid*.) Pursuant to the Settlement Agreement, the proceeds from any uncashed checks from the Net Settlement Amount shall escheat to the State of California, State Controller's Office, Unclaimed Property Division, in the name(s) of the corresponding Participating Class Member(s), which shall remain available for those Participating Class Members to claim thereafter. (*Id.* at § IV.L.; Kabateck Decl., ¶ 9.)

### IV. PLAINTIFFS AND CLASS COUNSEL WILL LIMIT THEIR REQUEST FOR ATTORNEYS FEES TO 25%.

While the Settlement allows for Class Counsel to seek attorneys' fees in the total amount not to exceed one-third (1/3) of the ultimate Gross Settlement Amount (*Id.*, at § II.D.), pursuant to the Court's Orders, Plaintiffs and Class Counsel will seek no more than twenty-five percent (25%) in fees at the time of Final Approval.

Federal Rules of Civil Procedure, Rule 23(h), which governs attorneys' fees in class actions, does not require class counsel to move for its fee award at the preliminary approval juncture, or even upon seeking final approval. (*See* Fed. R. Civ. P. 23(h); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 445 (3d Cir. 2016) ("[T]he separation of a fee award from final approval of the settlement does not violate Rule 23(h) [.]").) While this Second Renewed Motion is not a motion or application for fees, Plaintiff gladly presents to the Court evidence regarding the efforts expended by Class Counsel and a representation that Class Counsel will seek no more than 25% of the Gross Settlement Amount in attorneys' fees.

### A.    Standard For Calculation of Fee Awards

The Court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award." (*Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir.2002).)  In *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990), the Ninth Circuit Court of Appeals held that the "benchmark percentage [of 25% of the fund] should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  Although not mandated by the Ninth Circuit, courts often consider the following factors when determining the benchmark percentage to be applied: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's loadstar. (*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1120 (C.D. Cal. 2008); *See, e.g., In re Heritage Bond Litigation,* 2005 WL 1594403, *18 (C.D.Cal.2005) (exercising discretion to award 1/3 of the class fund as a fee).)

### B.    The Efforts Expended By Counsel

Plaintiff's counsel had already expended over 600 hours on this case until the filing of the previous Renewed Motion. (Kabateck Dec. at ¶¶ 14-15.) Below is a summary that sets forth a total of 611.2 hours, for a total lodestar of $**293,523.00** in attorneys' fees worked by all attorneys on behalf of Plaintiff thus far:

| Attorney Name | Title | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Brian S. Kabateck | Partner | 49.3 | $810 | $ 39,933.00 |
| Anastasia K. Mazzella | Partner | 54.4 | $750 | $ 40,800.00 |
| Shant A. Karnikian | 6th Year Associate | 61.9 | $550 | $ 34,045.00 |
| Shant A. Karnikian | 5th Year Associate | 52.2 | $500 | $ 26,100.00 |
| Cheryl A. Kenner | 3rd Year Associate | 199.4 | $425 | $ 84,745.00 |
| Cheryl A. Kenner | 2nd Year Associate | 138.5 | $350 | $ 48,475.00 |
| Nicholas R. Moreno | 2nd Year Associate | 55.5 | $350 | $ 19,425.00 |
| **TOTAL** | | **611.2** | | **$ 293,523.00** |

The grueling endeavors that comprise the above total include, but are not limited to the following:

- Gathering facts from Plaintiff and reviewing documents;
- Researching the claims and preparing the Complaint for filing;
- Moving *ex parte* to continue hearing on Defendant's Motion to Transfer Venue while the parties prepared for mediation (Dkt. No. 23);
- Researching, drafting, and revising a successful Opposition to Defendant's Motion to Transfer Venue (Dkt. Nos. 25-26);
- Researching novel issues regarding the applicability of California labor law to individuals doing work in other states (discussed further below);
- Propounding and responding to discovery;
- Reviewing over 20,000 pages of documents including personnel records, training manuals, policy manuals, trip logs, payroll statements, internal memos, etc.;
- Preparing for and taking 5 lengthy depositions of key witnesses in Ohio (including travel to/from Ohio), taking 2 depositions Los Angeles, and

defending Plaintiff's deposition in Los Angeles;

- Preparing for and attending mediation with Joel Grossman of JAMS;
- Negotiating extensively with counsel for Defendant to facilitate resolution, including lengthy email exchanges, telephone calls, and in-person meetings between counsel;
- Drafting and filing a 21-page Motion for Class Certification along with three declarations and 20 exhibits in support thereof (Dkt. No. 31);
- Reviewing Defendant's Opposition to the Class Certification Motion and preparing a draft of Plaintiff's Reply in support of his Motion for Class Certification (Dkt. No. 33);
- Negotiating and drafting a memorandum of understanding to memorialize the key terms of the settlement;
- Drafting and revising a long form settlement agreement; and
- Drafting and filing the initial Motion for Preliminary Approval (Dkt. No. 38). (Kabateck Dec., at ¶ 16.)

All of this work—and more—was completed within a span of a mere nine months. The Court set an aggressive schedule aimed at expeditiously progressing this matter towards certification and, if necessary, trial; and Plaintiff strictly adhered to this schedule.  For example, when the Court denied Plaintiff's unopposed request to continue hearing and briefing on the Motion to Transfer Venue given the possibility of early resolution at mediation (Dkt. Nos. 23-24), counsel for Plaintiff dedicated the requisite resources to successfully oppose the motion the following day. (Dkt. Nos. 25, 28.)  The October 18, 2018 Order denying the Motion to Transfer Venue also required "Plaintiff to file a Motion for Class Certification before January 20, 2018." (Dkt. No. 28.)  Even though the parties were in the midst of fruitful settlement negotiations in January 2018, Plaintiff adhered to the Court's schedule and filed a lengthy and complex Motion for Class Certification. (Dkt. No. 31.)

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

Counsel has scrutinized the billing entries used to determine these totals and believe that all entries are accurate. (Kabateck Decl., at ¶ 15.) No clerical time whatsoever has been included. In addition, Plaintiff's counsel anticipates expending further hours appearing at the hearing on this Renewed Preliminary Approval Motion, working with the Settlement Administrator on various logistical issues, responding to potential inquiries from class members, drafting a Motion for Final Approval, appearing at the Final Approval hearing, and addressing the myriad of issues that may arise after the final approval hearing. (Kabateck Decl., at ¶ 17.)

The billing rates used to calculate the lodestar here are reasonable in the relevant market for each of these attorneys, for comparably complex work by comparably qualified attorneys. According to The National Law Journal's Nationwide Sampling of Law Firm Billing Rates, billing rates for senior partners and associates at the following firms based in Southern California were, at the end of 2014 (or four years ago), as follows:

| Name | Range of Billing Rate for Partners | Range of Billing Rate for Associates |
|---|---|---|
| Cooley Godward Kronish | $660-$990 | $160-$630 |
| Knobbe, Martens, Olsen & Bear | $440-$785 | $295-$535 |
| Manatt, Phelps & Phillips | $640-$795 | $370 (avg.) |
| Rutan & Tucker | $345-$675 | $230-$500 |
| Shepard, Mullin, Richter & Hampton | $490-$875 | $275-$535 |

The hourly rates listed above for Plaintiff's counsel compare favorably with the four-year-old rates listed above, which are clearly lower than the rates now billed by those firms in 2018.

Thus, the "lodestar" fee in this action is properly calculated to be $**293,523.00** based on time reasonably expended and reasonable hourly billing rates. However,

the total attorneys fees Plaintiff's counsel plans to seek at the time of Final Approval

is $228,750.00 (25% of the Gross Settlement Amount), which requires a **negative**

**multiplier** of **0.78** times the reasonable lodestar.

### C.    The Complexity of the Case

Throughout the pendency of this litigation, Defendant has taken the position

that the California Labor Code does not apply to one who primarily works outside

California for a non-California employer.  (*See, e.g.,* Dkt. No. 33, p.7; Kabateck

Decl., at ¶ 17.)  The fact is that the nature of Defendant's business requires drivers to

spend little time actually driving or performing other services in any one state. This

creates a very novel—and hotly litigated—question: which state's law applies to

these drivers?  This gave rise to complex legal and factual issues necessitating

expenditure of resources for research and strategizing. (Kabateck Decl., at ¶ 17.)

While there is a presumption against extraterritorial application of California

wage-and-hour laws, California law is unclear as to exactly what a California resident

must show in order to overcome this presumption and invoke the protection of the

California Labor Code's rest break and wage requirements extraterritorially.

(*See Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F.Supp.2d 883, 898–99 (C.D.

Cal. 2009) ("There is no 'clear express[ion]' of extraterritorial application for

California wage and hour laws.").)   Neither the California Supreme Court nor the

Ninth Circuit have established a test for determining when the provisions of the

California Labor Code might apply to work performed outside the territorial

boundaries of the state.  Lower courts addressing the question examined factors such

as the nature of the work being performed, the amount of work being performed in

California, the residence of the employee, the residence of the employer, whether the

conduct which gives rise to liability occurred in California, and the employer's ties to

the jurisdiction.  (See *Oman v. Delta Air Lines, Inc.,* 230 F.Supp.3d 986, 991-94 (N.D.

Cal. Jan. 6, 2017); *Bernstein v. Virgin Am., Inc.,* 227 F.Supp.3d 1049, 1062-63 (N.D.

Cal. Jan. 5, 2017); *Ward v. United Airlines*, No. C 15-02309, 2016 WL 3906077, *3–5

18

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

(N.D. Cal. July 19, 2016); *Sarviss*, 663 F.Supp.2d at 900.)

In addition to the legal ambiguity surrounding the issue, there was also factual concerns. Defendant is headquartered in Kentucky, while it picks up produce from suppliers primarily in California and Arizona, and then transports that produce to customers in Kentucky, Ohio, Indiana, Pennsylvania, and other Midwestern states. In other words, the nature of Defendant's business requires drivers to spend little time actually driving or performing other services in any one state.  For example, even though Plaintiff resided in California, it is difficult to determine exactly how much time he spent in a specific state.

Given that this issue was raised at all junctions throughout the pendency of the litigation as a possible defense, an argument for opposing certification, and a basis for seeking decertification, Plaintiff's counsel spent a great deal of time researching and analyzing the question of the extraterritorial application of California's wage-and-hour laws to long-haul truck drivers who live in California, but drive both inside and outside of the state. (Kabateck Decl., at ¶ 17.)  Accordingly, this case contained complex factual and legal issues beyond those that arise in a typical misclassification suit.

### D.    Substantiation of Costs

Similar to the process for seeking fees, at the time of final approval, Plaintiff's counsel will file an application requesting that the Court award Plaintiff's counsel reasonable costs incurred, as proven, not to exceed a total of Thirty-five Thousand Dollars ($35,000).  Nevertheless, Plaintiff herein provides evidence of the composition of those costs.

As of May 9, 2018, counsel for Plaintiff have incurred $30,806.96 in actual costs prosecuting this case, which have been reviewed for accuracy and are attached to the Declaration of Brian S. Kabateck as **Exhibit 2.** These costs include, but are not limited to: $1,585.00 in filing fees; $5,150.00 in mediation fees; $15,127.90 in deposition costs; approximately $2,271.70 in airfare for travel to/from Ohio for

---

19

depositions; approximately $294.40 in ground transportation associated with travel to/from depositions and mediation; $919.30 in meals while traveling for depositions; and approximately $5,450 associated with Court fees for accessing documents on the docket, Westlaw legal research charges, postage, and photocopying.

In addition to the already incurred and accounted-for $30,806.96, Plaintiff has built in a cushion of an additional $4,193.04 for additional costs that may be incurred between the time of settlement and final approval. Of course, at the time of making a formal application for reimbursement of costs, only the exact amount incurred will be sought.

**E.    Costs and Fees Not Awarded at Final Approval Will Be Disbursed to Class Members.**

Lastly, Plaintiff addresses the Court's final concern regarding disbursement of costs not approved for reimbursement at the time of Final Approval. In the Minute Order denying Plaintiffs' initial Motion for Preliminary Approval, the Court ordered the parties to reflect in the settlement agreement that "[a]ny amount the Clerk does not grant from the $35,000.00 shall be dispersed among the class members." (Dkt. No. 38.) Paragraph D.1. of the Settlement Agreement (attached as **Exhibit 1** to the Declaration of Brian S. Kabateck), specifically provides that "[a]ny amount for attorneys' fees and/or costs not approved by the Court will be included in the Net Settlement Amount and Distributed to Participating Class Members." (Kabateck Decl., **Exhibit 1**, pp. 12-13.) Accordingly, Plaintiff respectfully submits that no further changes to the settlement agreement regarding the issue of disbursement of unawarded costs are necessary.

**V.    STANDARDS FOR APPROVAL OF SETTLEMENT**

**A.    The Two-Step Approval Process**

Any settlement of class litigation must be reviewed and approved by the Court. (Federal Rules of Civil Procedure, Rule 23(e).) This is done in two steps: (1) an early (preliminary) review by the Trial Court and (2) a final review after notice has been

distributed to the Class Members for their comments or objections.  (*Manual for Complex Litigation* (3d ed. 1995) § 30.41.)

Thus, preliminary approval by the Trial Court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements.  As Professor Newberg comments, "[t]he strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary.  The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing."  (4 Alba Conte & Herbert B. Newberg (4th ed. 2002) Newberg on Class Actions, § 11.26.)

Here, the Parties have reached such an agreement, which Plaintiff now submits to this Court, in connection with this unopposed Motion.  The Settlement Agreement sets forth all terms of the Settlement reached by the Parties.  (Kabateck Decl., ¶ 2; see generally Kabateck Decl., **Exhibit 1**.)

### B.    Class Counsel's Thorough Investigation and Litigation Efforts

Throughout the prosecutions of the *Craft* Action, the Parties have engaged in sufficient investigation, discovery, and discussions to assess the relative merits of the claims of Plaintiff and Defendant's defenses to them, as well as the likelihood of recovery.  (Kabateck Decl., ¶¶ 4, 5.)  On June 19, 2017, Plaintiff LARRY CRAFT filed the *Craft* Action in the Los Angeles Superior Court, Case No. BC665578.  (Kabateck Decl., ¶ 3.)  On July 18, 2017, Defendant removed the *Craft* Action to the United States District Court for the Central District, which was then assigned Case No. 2:17-cv-05289-SVW and to the Honorable Stephen V. Wilson.  (Dkt. Nos. 1, 6.)  On September 13, 2017, Defendant moved to transfer the venue of the *Craft* Action to the Eastern District of Pennsylvania.  (Dkt. No 22.)  Plaintiff opposed that transfer on September 20, 2017.  (Dkt. No 25.)   The Court's Order of October 18, 2017 denied Defendant's Motion to Transfer Venue and requested that Plaintiff file his Motion for Class Certification before January 20, 2018.  (Dkt. No. 28.)

The Parties exchanged both formal and informal discovery in preparation for the mediation that took place on December 14, 2017.  (Karnikian Decl., ¶ 5.)  The Parties were not able to settle the case at the mediation, so depositions commenced a few days later as did ongoing settlement negotiations.  (*Id.*, at ¶ 6.)  Plaintiff took the deposition of Defendant's Person Most Knowledgeable ("PMK"), Michael Lense, on 26 topics pursuant to Federal Rule of Civil Procedure, Rule 30(b)(6).  (*Id.*)  Additionally, Plaintiff deposed a number of RWI's employees, including its Executive Vice President, Terminal Manager, Director of Safety, Senior Director of Operations, Controller, and Director of Recruiting and Lease Purchase.  (*Id.*)  Defendant took the deposition of Named Plaintiff as well.  (*Id.*)  The Parties also exchanged a substantial amount of discovery, including thousands of pages of documents produced, class-wide data, and responses to special and form interrogatories.  (*Id.*)

Finally, on January 19, 2018, Plaintiff filed his Motion for Class Certification.  (Dkt. No. 31, Karnikian Decl., ¶ 7.)  Defendant filed its opposition on February 2, 2018.  (Dkt. No. 33.)  However, the Parties settled the *Craft* Action before Plaintiff's filing deadline for his Reply in Support of Plaintiff's Motion for Class Certification, so Plaintiff filed a Notice of Settlement on February 14, 2018.  (Dkt. No. 36; Karnikian Decl., ¶ 7.)  Accordingly, the Court did not rule on Plaintiff's class certification motion.  (Karnikian Decl., ¶ 7.)

As mentioned, the Parties participated in one arms'-length mediation session in this litigation.  Plaintiff LARRY CRAFT and his counsel and Defendant and its counsel participated in mediation on December 14, 2017 with mediator Joel Grossman of JAMS.  (Kenner Decl., ¶ 5.)  The mediation did not result in an immediate resolution of the *Craft* Action.  (Kabateck Decl., ¶ 5.)  With the benefit of the foregoing experience and discovery and string of depositions at the time of the ongoing settlement negotiations in the weeks following the mediation, counsel were well-placed to properly evaluate the strengths and weaknesses of their respective claims and defenses debated at length at mediation, the value of the proposed

Settlement, and the risks and expenses of continued litigation through trial and appeal. (Kabateck Decl., ¶ 5.)

In sum, the investigation, prosecution, and mediation have included, among other efforts, (a) multiple meetings with Plaintiff; (b) exchanging information; (c) analyzing Defendant's legal positions taken; (d) investigating the viability of class treatment of the Claims asserted in the *Craft* Action; (e) defending the deposition of Named Plaintiff and taking the depositions of Defendant's PMK and six of its employees; (f) researching the applicable law with respect to the Claims asserted in the *Craft* Action and the potential defenses thereto; (g) moving for class certification; and (h) assembling and analyzing data to calculate potential class-wide damages. (*Id.*) Therefore, Class Counsel have sufficiently investigated the potential and actual claims and defenses thereto, zealously prosecuted their respective actions through the litigation stage, and have remained engaged throughout the settlement stage. (*Id.*)

## C.    Procedures for Settlement Before Class Certification

"[P]re-certification settlements are routinely approved if found to be fair and reasonable." (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 244; accord *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1803 (Although the settlement was reached before any "adversary certification," the court was satisfied that it was "fair, adequate, and reasonable."); *see also In re Baldwin-United Corp.* (S.D.N.Y. 1984) 105 F.R.D. 475, 478 ("many courts have employed this practice in the name of judicial efficiency in order to facilitate apparently beneficial settlement proposals.")

The standard for class certification in the settlement context is a significantly lower threshold that in a contested proceeding or a trial context:

> Two basic purposes for the Rule 23 certification requirements, as they relate to questions of a nationwide class are: (1) to keep the lawsuit manageable for trial; and (2) to protect the interests of the nonrepresentative members. The first purpose is inapposite in the settlement context, and the second, as it relates to commonality of issues, *only makes a difference in*

23

> *the nonrepresentative class members would do much better by*
> *litigating on their own or in their own jurisdiction.*  The
> second category concerns are protected by the trial court's
> fairness review of the settlement.

(*Dunk*, *supra*, 48 Cal.App.4th at 1807, fn. 19 (emphasis added).)  The reason for this

is that no trial anticipated in the settlement context, so any case management issues

inherent in determining if the class should be certified need not be confronted.

(*Amchem Prods. v Windsor* (1987) 521 U.S. 591, 620.)

The very liberal standard expressed in *Dunk* is plainly satisfied here.  The

requirements for class certification in the settlement context—ascertainability,

numerosity, predominance of common questions of law and fact, typicality, and

adequacy are all met here.  It certainly cannot be said that the class members would do

"much better by litigating on their own."  (*Dunk*, *supra*, 48 Cal.App.4th at 1807,

fn.19.)  The Settlement Class should be conditionally certified as requested.

### 1.    Ascertainability and Numerosity

Plaintiff asserts, and Defendant does not oppose for settlement purposes, that

the proposed Settlement Class is ascertainable and sufficiently numerous.  A "class is

ascertainable if it identifies a group of unnamed plaintiffs by describing a set of

common characteristics sufficient to allow a member of that group to identify himself

or herself as having a right to recover based on the description."  (*Bartold v. Glendale*

*Fed. Bank* (2000) 81 Cal.App.4th 816, 828.)  The class definition, the size of the class,

and the means for identifying the members of the class determine whether the class is

ascertainable.  (*Reyes v. Bd. of Supervisors* (1987) 196 Cal.App.3d 1263, 1274.)

In this case, the members of the proposed Settlement Class are identifiable from

Defendant's own records.  Further, the Settlement Class Members are also sufficiently

numerous to justify class certification.  Defendant has identified 584 drivers

comprising the Settlement Class.

### 2.    Predominance of Common Questions of Law and Fact

The interrelated commonality and predominance requirements are satisfied if

24

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

common issues predominate.  At its heart, this is a procedural inquiry asking "whether . . .  the issues which may be jointly tried, when compared with those requiring separate jurisdiction, are so numerous or so substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (citing *Collins v. Rocha* (1972) 7 Cal.3d 232, 238).)  Further, in the lower threshold of the settlement context, "commonality of issues only makes a difference if the non-representative class members would do much better by litigating on their own."  (*Dunk*, *supra*, 48 Cal.App.4th at 1807, fn. 19.)

Plaintiff contends, and Defendant does not dispute for settlement purposes only, that the Settlement Class Members claims all stem from a common set of circumstances and occurrences.  By definition, all worked as independent contractor drivers for Defendant.  Plaintiff contends that Defendant misclassified its truck drivers and failed to provide them meal and rest breaks, or pay them proper wages and overtime wages.

Specifically, Plaintiff contends, and Defendant does not dispute for settlement purposes only, that commonality is satisfied.  The claims of Plaintiff and Class Members all flow from the same facts and legal claims arising from Defendant's alleged misclassification of drivers as "independent contractors" in violation of Labor Code § 226.8(a)(1), and whether, as a result of such alleged misclassification, Defendant failed to comply with other provisions of the Labor Code include:

    a.  Whether Defendant misclassified employees as "independent contractors," in violation of Labor Code § 226.8(a)(1);

    b.  Whether Plaintiff and each Class Member were not paid minimum wage for each hour worked or part thereof during which they were required to perform acts at the direction and for the benefit of Defendant;

    c.  Whether Defendant engaged in a pattern and practice of failing to pay Plaintiff and the members of the Class who worked as drivers in California for the total

hours worked during the Class period;

d.  Whether Defendant violated Labor Code sections 226.7 and/or 512, Industrial Welfare Commission ("IWC") Order No. 9, section 11 by failing to provide timely, off-duty 30-minute meal periods to Plaintiff and members of the Class who worked as drivers in California during the Class period and to provide 10-minute, uninterrupted rest breaks as contemplated by California law for work periods in excess of four (4) hours or major fraction thereof;

e.  Whether Defendant failed to properly compensate Plaintiff and the members of the Class who worked as drivers in California during the Class Period for missed, untimely, or on-duty meal periods and/or rest breaks as required by California law;

f.  Whether Defendant violated Labor Code section 226(a) by issuing inaccurate wage statements to Plaintiff and members of the Class that failed to accurately state total hours worked and/or to include payments for all hours worked, premium wages for noncompliant or missed meal periods and/or rest breaks throughout the Class Period;

g.  Whether Defendant violated Labor Code section 2802 for failure to reimburse Plaintiff and the Class for business expenses incurred in performing their job; Whether Defendant violated Labor Code section 221 for unlawfully deducting amounts from Plaintiff and Class Members' wages for business-related expenses incurred in the performance of their job duties; and

h.  Whether Defendant engaged in unfair practices and violated California Business & Professions Code section 17200 by failing to comply with the Labor Code Provisions set forth above and in the operative complaint.

This common course of conduct is at the core of the allegations that Defendant violated California wage and hour laws, including but not limited to, the California Labor Code, the California Business and Professions Code, and the IWC Wage Orders, which create numerous questions of law and fact common to all Settlement

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

Class Members.  All Settlement Class Members seek the same legal remedies under the same state laws.  (Kabateck Decl., ¶ 6.)  The complex questions implicated by the facts and law in this case strongly suggest that Settlement Class Members could not do substantially better than this Settlement by litigating individually.  (*Id.* at ¶ 9; see *Dunk*, *supra*, 48 Cal.App.4th 1807, fn. 19.)  Thus, Plaintiff contends, and Defendant does not dispute for settlement purposes only, that the commonality and predominance requirements for certification, particularly in the less intensive context of a Settlement Class are therefore satisfied.

### 3.    Typicality

Typicality means merely that the class representative is similarly situated to the members of the class, not that his claims are identical.  (*Classen v. Weller* (1983) 145 Cal.App.3d 27, 45–46.)  It suffices if the class representative's claims arise from the same event or course of conduct that gives rise to the class claims, and are premised upon the same legal theories.  (*Id.*)

Here, Plaintiff submits, and Defendant does not dispute for settlement purposes only, that each of his claims arises out of the same type of factual and legal circumstances of each Class Member.  Plaintiff contends that he regularly missed meal periods and rest breaks without proper compensation, had business expenses deducted unlawfully, and worked overtime without proper compensation, and, based on his understanding of Defendant's operations with respect to Plaintiff and each Class Member, each Class Member suffered the same injuries.  As such, for purposes of certifying the Settlement Class, the typicality requirement is satisfied.

### 4.    Adequacy

"Adequacy of representation depends on whether the plaintiff's attorney is qualified to conduct the proposed litigation and the plaintiff's interests are not antagonistic to the interests of the class."  (*McGee v. Bank of America* (1976) 60 Cal.App.3d 442, 487.)  Here, Plaintiff submits, and Defendant does not dispute for purposes of certifying the Settlement Class, that he possesses the same type of

interests and suffered the same type of injuries as the other Class Members.  In
addition, Plaintiff has prosecuted this matter diligently through their counsel.
Plaintiff's counsel have extensive experience in class action wage and hour litigation,
including federal and state misclassification and wage and hour class actions.
(Kabateck Decl., ¶ 4, 13.)

## VI.     THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON OBJECTIVE EVIDENCE.

The settlement is fair, reasonable, and adequate for the reasons stated in
accompanying Declaration of Brian S. Kabateck filed in support of Plaintiff's Motion
for Preliminary Approval of Class Action Settlement.  (Kabateck Decl., ¶¶ 5, 9.)  The
settlement for each participating Class Member is fair, reasonable, and adequate,
given the inherent risk of litigation, the risk relative to class certification, and the costs
of litigation.  (*Id.*)  The settlement that has been reached, subject to this Court's
approval, is the product of a great deal of effort and smart, efficient attorney work.
(*Id.*)  After expeditiously but prudently litigating this matter involving several
depositions, thousands of pages of discovery and data, dozens of meet-and-confer
sessions, and one mediation followed by weeks of ongoing settlement negotiations,
the Parties settled the *Craft* Action.  (Kabateck Decl., ¶ 5.)

### A.     The Strength of Plaintiff's Case and Complexities of Further Litigation

Plaintiff believes that the Class claims in this action are legally meritorious and
present a reasonable probability of a favorable determination on behalf of the Class, as
is borne out by the significant amount offered in the settlement.  At the same time,
there is undeniably significant litigation risk avoided by the proposed Settlement,
whether at class certification proceedings, at trial, or in appellate proceedings.

Given these very real litigation risks, Plaintiff's counsel strongly believes that
the Settlement of $915,000 is fair.  (*Id.*)  The settlement amount is, of course, a
compromise figure.  (*Id.*)  Plaintiff took into account the risks that the class would not

be certified or later decertified, risks related to proof of damages, risks related to the extraterritorial application of California employment law, and the strengths and weaknesses of Defendant's other defenses.  (*Id*.)  Plaintiff also took into account the possibility that if a settlement were reached after additional years of litigation, the great expense and attorneys' fees of litigation would reduce the amount of funds available to Plaintiff for settlement.  (*Id*.)  Furthermore, Plaintiff also took into consideration the time delay and financial repercussions of trial and the possibility of an appeal by Defendant.  (*Id*.)  Accordingly, the Settlement Amount is fair and adequately compensates the Class for the wage and hour claims.  (*Id*.)

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that the negotiations were conducted in good faith.  (*Newberg*, § 11.51; *In re Chicken Antitrust Litigation* (N.D. Ga. 1980) 560 F.Supp. 957, 962; *Priddy v. Edelman* (6th Cir. 1989) 883 F.2d 438, 447; *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.* (7th Cir. 1987) 834 F.2d 677, 682.)  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the (*Hammon v. Barry* (D.D.C. 1990) 752 F.Supp. 1087; *Steinberg v. Carey* (S.D.N.Y. 1979) 470 F.Supp. 471; *In re Armored Car Antitrust Litigation* (N.D. Ga. 1979) 472 F.Supp. 1357, aff'd in part, rev'd in part in 645 F.2d 488 (5th Cir. 1981).)

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they appear to be competent, have experience with this type of litigation, and have obtained substantial evidence from the opposing party.  (See 4 *Newberg on Class Actions*, § 11.47.)  Here, the plaintiff and defense firms involved in the case have a great deal of experience in wage and hour class action litigation.  Counsel for Plaintiff have been approved as Class Counsel in numerous other wage and hour class actions. (Kabateck Decl., ¶¶ 4, 13.)

As already discussed herein, the Parties have engaged in sufficient investigation, discovery, and discussions to assess the relative merits of the claims of Plaintiff and Defendant's defenses to them.  (*Id.*, at ¶ 5.)  The settlement is for a total of $915,000 and it does not require that the Class Members submit claim forms and there is no residual to revert to Defendant.  (Kabateck Decl., **Exhibit 1**, § I.J.)  Any portion of a Class Member's settlement not paid as a result of an invalid address or any checks issued by the Settlement Administrator to Participating Class Members not cashed within one hundred and eighty (180) days will be void.  (Kabateck Decl., **Exhibit 1**, §§ I.GG., IV.L.)  Pursuant to the Settlement Agreement, the proceeds from any uncashed checks from the Net Settlement Amount shall escheat to the State of California, State Controller's Office, Unclaimed Property Division, in the name(s) of the corresponding Participating Class Member(s), which shall remain available for those Participating Class Members to claim thereafter.  (Kabateck Decl., **Exhibit 1**, §§ I.GG., IV.M.; Kabateck Decl., ¶ 9.)

In sum, Plaintiff's counsel have thoroughly, investigated, reviewed, and researched the facts and law relating to this Action.  Plaintiff's counsel are of the opinion that the settlement documented in the Settlement Agreement is fair, adequate, and reasonable and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay and defenses asserted to the merits and the class action status of this Action.  (Kabateck Decl., ¶¶ 4, 5, 8, 9.)

**B.    The Benefits Conferred by the Settlement**

The proposed Settlement provides for a relatively easy settlement administration procedure which imposes minimal burdens on the Class.  (Kabateck Decl., ¶ 9; see Kabateck Decl., **Exhibit A** to Exhibit 1.)  There is no claims-made process, and a simple opt-out procedure by which class members may submit to the Settlement Administrator a request to be excluded from the Settlement within forty-five (45) days from the date Notice Packets are mailed to the Class.  (Kabateck Decl., **Exhibit A**, § IV.F.)  Awards shall be determined based on number of Qualifying

30

Work Weeks the Class Member worked in California during the Class Period or else a truck he owned was driven in California during the Class Period. Each Class Member's Qualifying Work Weeks will be set forth on the Class Member's Notice of Estimated Individual Settlement Payment along with the amount of the estimated Individual Settlement Payment. (*Id.*, at § IV.D.; see Kabateck Decl., **Exhibit B** to Exhibit 1.) Individual Settlement Payments will be paid from the Non-Reversionary Net Settlement Amount to Participating Class Members as discussed herein and set forth in the Settlement Agreement. (Kabateck Decl., **Exhibit A**, § II.A.)

The Individual Settlement Payments to Participating Class Members are made in exchange for Participating Class Members' release of all Released Parties from all Released Claims, which is set forth in the Settlement Agreement at sections I.BB. and I.CC. (*Id.*, at §§ I.BB., I.CC.) Additionally, Participating Class Members who cash their checks will effectively opt in as an FLSA Class Member and thereby release all losses, damages, liquidated damages, demands, penalties, interest, liabilities, causes of action, complaints or suits, at law or in equity against the Released Parties under the Fair Labor Standards Act and its associated regulations. (*Id.*)

In addition to the Released Claims set forth in the Settlement Agreement that are mentioned above, only Named Plaintiff enters into a broader general release, including a waiver of California Civil Code Section 1542 as to any claims he does not know or suspect to exist in his favor against the Released Parties. (*Id.*, at § III.D.)

### C.    The Experience and Views of Counsel

Although recommendations of counsel proposing the Settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, have experience with this type of litigation, and discovery has commenced. (*Newberg*, § 11.47.) Indeed, courts should not substitute their judgment for that of the proponents of a settlement, especially when negotiated by experienced counsel familiar with the litigation. (*See, e.g., Hammon v. Barry* (D.D.C. 1990) 752 F.Supp. 1087 (citing *Newberg* § 11.44.).)

Plaintiff's counsel is experienced in class action litigation, with decades of combined complex litigation experience, including particular experience in wage-and-hour class action litigation. (Kabateck Decl., ¶ 4.) Defense counsel are no less qualified or experienced. (Kabateck Decl., ¶ 4.) This was a hard-bargained settlement hammered out during mediation and extensive post-mediation negotiations. (Kabateck Decl., ¶ 5.) Counsel concur that the Settlement represents a fair and reasonable resolution to this matter in light of the various risks and costs to the respective parties of continued litigation. (*Id.*, at ¶¶ 5, 9.)

### D.    The Absence of "Obvious Defects" or Any Indicia of Unfairness

There was no collusion among the settling Parties, or any other "obvious defect" or indicia of unfairness with regard to the proposed Settlement. (*Id.*, at ¶ 4.) Litigation was at all times fully adversarial, with counsel for each side vigorously advocating for their clients' respective positions. (*Id.*)

The proposed Settlement does not place Named Plaintiff's interests ahead of the interests of the Class as a whole. (Kabateck Decl., ¶ 8.) Apart from a reasonable Enhancement Payment for his efforts on behalf of the Class, typical in class action litigation (and subject to Court approval after notice to the Class), Named Plaintiff's personal recovery in this Action and Settlement will be determined in the same as any other Participating Settlement Class Member. (*Id.*) Named Plaintiff has not in any way tried to leverage a class action for personal gain or agenda. (*Id.*)

The proposed Settlement also does not place the attorneys' interests ahead of Class Members' interests. Settlement provisions relating to attorneys' fees and litigation expenses in the Action were not negotiated until after an agreement was reached in principal with respect to the direct class settlement benefits and the Gross Settlement Amount. (*Id.*) Further, the Settlement provides only for a maximum permissible amount of the request for any award of attorneys' fees (which Plaintiff's counsel has agreed, by and through this motion, to limit to a maximum of 25%) and litigation expenses. Any award of fees and expenses remains to be determined by the

1    Court at the time of the fairness hearing and must necessarily be found to be fair and

2    reasonable to the Settlement Class based on applicable law.  Again, each Settlement

3    Class Member has the right to object and be heard regarding the amount of fees and

4    expenses requested.  (Kabateck Decl., **Exhibit A**, § III.G.)

5    **E.    The Settlement Falls Within the Range of Possible Approval.**

6    Finally, the Court must consider whether the settlement falls within the range of

7    possible approval.  "To evaluate the range of possible approval criterion, which

8    focuses on substantive fairness and adequacy, courts primarily consider plaintiffs'

9    expected recovery balanced against the value of the settlement offer." *Vasquez v.*

10   *Coast Valley Roofing, Inc.* (E.D. Cal. 2009) 670 F.Supp.2d 1114, 1125 (citing *In re*

11   *Tableware Antitrust Litig.* (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1080 (internal

12   quotations omitted).

13   Class Counsel has calculated the range of potential damages to the class

14   members, exclusive of penalties and interest, to be approximately $34,051,944, should

15   the case proceed to trial.  (Kabateck Decl., ¶ 10.)  Defendants contest liability, as well

16   as the propriety of certification, and are prepared to vigorously defend against

17   Plaintiff's claims and oppose certification if the action is not settled.  (*Id.*)  However,

18   the law on certain issues in this case are both unsettled and uncertain.  Given the

19   maximum potential damages, as well as the substantial risks entailed by this case, the

20   $915,000 non-reversionary settlement sum is within the range of possible approval.

21   (*Id.*)

22   The significant risk that this Court may deny class certification is obviated by

23   the Settlement, particularly in light of certification standards under Federal Rule of

24   Civil Procedure, Rule 23, as articulated by the United States Supreme Court in *Wal-*

25   *Mart Stores, Inc. v. Dukes* (2011) 131 S.Ct. 2541.  (*Id.*)  Further, even if Plaintiff was

26   to obtain certification and ultimately prevail on the merits, a legitimate controversy

27   exists as to each cause of action and Plaintiff recognizes that proving the amount of

28   wages due to each individual Class Member would be an expensive and time-

33

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

consuming proposition. (*Id.*) In addition, continued litigation would inevitably delay payment to the class. The fact that a settlement will eliminate delay and further expenses strongly weighs in favor of approval. *Id.*; *see also Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F. 3d 948, 966.

The Settlement is fair, adequate, and reasonable even though the amount in controversy greatly exceeds the settlement amount. While the amount in controversy may be well in excess of $34 million, the simple fact is that there is no guarantee that Class would recover even close to this amount if this Action proceeded to certification and trial. This case poses significant unsettled legal issues that, if decided in Defendant's favor, would be potentially dispositive. This Settlement represents a compromise based on the facts and circumstances attendant to this Action. There is undeniably significant litigation risk avoided by the proposed Settlement, whether at class certification proceedings, at trial, or in appellate proceedings.

## VII. CONCLUSION

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court: (1) grant this Motion for Preliminary Approval and enter the Proposed Order Granting Preliminary Approval of Class Action Settlement; (2) approve the content and plan for distribution of the Notice Packet; (3) provisionally certify the class described herein for settlement purposes only; (4) appoint Plaintiff as Class Representative; appoint Brian S. Kabateck and Shant A. Karnikian of Kabateck Brown Kellner LLP as Class Counsel; and (6) schedule a Final Approval Hearing.

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

Dated:  July 5, 2018                          **KABATECK BROWN KELLNER LLP**


                                    By:    /s/ Shant A. Karnikian
                                           Brian S. Kabateck
                                           Anastasia K. Mazzella
                                           Shant A. Karnikian

                                           Attorneys for Plaintiff LARRY CRAFT
                                           and all others similarly situated

**SECOND RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**